NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
30442
28-NOV-2011
08:35 AM**

NO. 30442

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v. ALBERT VILLADOS, JR.,
also known as ALBERTO VILLADOS, JR., Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 08-1-0115(2))


SUMMARY DISPOSITION ORDER
(Nakamura, Chief Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Albert Villados, Jr. (**Villados**) appeals from the Judgment Conviction and Sentence entered by the Circuit Court of the Second Circuit (**Circuit Court**) on April 15, 2010.[1]

On February 25, 2008, in CR. No. 08-1-0115, Plaintiff-Appellee State of Hawaiʻi (**State**) charged Villados by Felony Information with two counts:  Promoting A Dangerous Drug in the Second Degree, in violation of Hawaiʻi Revised Statutes (**HRS**) § 712-1242(1)(b)(i) (Supp. 2010)[2] and Prohibited Acts Related to

---

[1]     The Honorable Shackley F. Raffetto presided.

[2]     HRS § 712-1242(1)(b)(i) provides:

> **Promoting a dangerous drug in the second degree.**  (1)
> A person commits the offense of promoting a dangerous drug
> in the second degree if the person knowingly:
> . . . .
> > (b) Possesses one or more preparations, compounds, mixtures,
> > or substances of an aggregate weight of:
> > > (continued...)

Drug Paraphernalia, in violation of HRS § 329-43.5(a) (2010).[3/] After a jury trial, on December 2, 2009, Villados was found guilty on both counts.

At the time of the offenses, Villados was on felony probation in four prior drug-related cases. In light of the prior convictions, on Count 1, the State filed a Motion for Imposition of Mandatory Minimum Period of Imprisonment pursuant to HRS § 706-606.5 (Supp. 2010), requesting that Villados be sentenced as a repeat offender to a ten-year mandatory minimum term of imprisonment without the possibility of parole. At the sentencing hearing held on April 15, 2010, Villados stipulated that he was subject to sentencing as a repeat offender. Additionally, the defense admitted the probation violations in his four prior drug-related cases and stated "that [the defense was] prepared to go forward with sentencing on everything." The Circuit Court found that Villados "violated substantial conditions of his probation" in four criminal cases: (1) CR. No. 03-1-0459, (2) CR. No. 04-1-0489, (3) CR. No. 04-1-0490, and (4) CR. No. 04-1-0491.

Villados was sentenced to ten years of incarceration for Count 1, with a mandatory minimum term of ten years, and five years of incarceration for Count 2, terms to run consecutively, with credit for time served. The Circuit Court also ordered that

---

[2](...continued)
> (i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers;

[3]     HRS § 329-43.5(a) provides:

> **Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. . . .

the sentence in this case was to run consecutively to the re-sentencing for probation revocation in his four prior cases. The Notice of Entry for the Judgment Conviction and Sentence was filed on April 15, 2010. Villados timely appealed.

Defendant-Appellant Villados raises the following points of error on appeal:

1. The Circuit Court abused its discretion in admitting testimony regarding Villados's prior bad acts;

2. The Circuit Court erred in admitting the hearsay testimony of Villados's post-arrest statements;

3. Absent the inadmissible prior bad act and hearsay evidence, there was insufficient evidence to support Villados's convictions; and

4. The Circuit Court's consecutive term sentences, with a potential maximum term of thirty-five years of incarceration, violated Villados's right to a jury trial and his due process rights where the court knew of the State's plea offer and allegedly imposed a significantly harsher sentence upon Villados because he exercised his right to a jury trial.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Villados's contentions as follows:

(1) Hawai'i Rules of Evidence (**HRE**) Rule 404(b)[4] prohibits the admission of evidence of other crimes, wrongs or acts introduced for the sole purpose of establishing criminal

---

[4]     HRE Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

propensity, but under certain circumstances allows such evidence to be offered to prove other facts of consequence. State v. Behrendt, 124 Hawai'i 90, 102, 237 P.3d 1156, 1168 (2010). Prior bad act evidence under HRE rule 404(b) may be admissible when it is (1) relevant, and (2) more probative than prejudicial. State v. Cordeiro, 99 Hawai'i 390, 404, 56 P.3d 692, 706 (2002). Where evidence is offered for substantive reasons rather than propensity, HRE Rule 403 requires a trial court to weigh the potential prejudicial effects of the evidence against its probative value. Id.

The State was required to prove that Villados knowingly possessed at least one-eighth ounce of methamphetamine to establish Count 1 Promoting A Dangerous Drug in the Second Decree. See HRS § 712-1242(1)(b)(i) (Supp. 2010). Amy Bautista's (**Bautista**) testimony was relevant to prove Villados's knowledge of the methamphetamine and his intent to exercise dominion and control over it. Bautista testified that she and Villados had been living together for two or three months before their residence was raided by the Maui County police on February 20, 2008. Bautista identified a fanny pack and a brown eyeglass case found during the search, which contained methamphetamine, as belonging to Villados and testified that she had accompanied him when he purchased the fanny pack and eyeglass case. She also identified a picture of herself and Villados in which Villados was wearing the fanny pack. Bautista testified that while she was living with Villados she saw him with methamphetamine at the house, and that she would see Villados break down the methamphetamine into smaller packets and then put the small packets of methamphetamine into the fanny pack. This evidence was probative of whether Villados had the knowledge of the methamphetamine and that he exercised dominion and control over it. Because Villados was not charged with the intent to distribute the methamphetamine, this evidence was not being

offered to portray Villados as a drug dealer as Villados contends, but rather to show that he knowingly possessed the methamphetamine.

The Circuit Court explained its ruling to allow Bautista's testimony, stating that the "evidence goes to show[] that there was a plan, or he was preparing to possess the drugs and that he had knowledge of the drugs." The court stated that Bautista's testimonial evidence about Villados purchasing the fanny pack and then using it to store methamphetamine was relevant to show opportunity, plan, knowledge, etc. The Circuit Court also noted that "certain types of evidence [] might reflect upon [Villados] badly," but that they can be admitted "if they are admitted for a different purpose," such as is the case here.

The State clearly articulated a legitimate purpose for Bautista's testimony, other than to show character and propensity, i.e., to establish knowledge, intent, modus operandi, identity, plan, opportunity, and absence of mistake or accident. The Circuit Court did not err in determining that the evidence was relevant and probative of facts other than character and propensity.

Nor did the Circuit Court abuse its discretion in determining that the probative value of this evidence substantially outweighed the danger of unfair prejudice to Villados. The Circuit Court properly considered the factors set forth in State v. Steger, 114 Hawai'i 162, 172, 158 P.3d 280, 290 (App. 2006):

> the strength of the evidence as to the commission of the
> other bad acts, the similarities between the other bad acts
> and the charged crime, the time that has elapsed between the
> other bad acts and the charged crime, the need for the
> evidence, the efficacy of alternate proof, and the degree to
> which the evidence will probably rouse the jury to
> overmastering hostility.

Here, Bautista's testimony was highly probative of Villados's knowledge and intent to exercise dominion and control over the methamphetamine. The need for the evidence was

5

heightened by the defense's theory of the case at trial, *i.e.* that he was merely present in the residence and that mere proximity to the fanny pack is not enough to prove that he knowingly possessed more than one-eighth of an ounce of methamphetamine. The potential prejudice argued by Villados, that the evidence "compelled the jury" to conclude that he was a drug dealer, was lessened by the fact that Villados was not charged with a distribution offense. In addition, the court specifically instructed that the jury "must not be influenced . . . by passion or prejudice against the defendant" in reaching their verdict. Accordingly, the Circuit Court did not abuse its discretion when it concluded that the probative value outweighed the prejudicial effects of the testimony.

(2) Bautista testified that Villados told her on a number of occasions to "take the blame for it," referring to "his fanny pack." In addition, the Circuit Court allowed the testimony of Melissa Montilliano (**Montilliano**), and a recording of Villados's statements to Montilliano over the telephone, the gist of which was to ask her to urge Bautista to take the rap for him. Villados contends that this evidence was inadmissible hearsay.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. HRE Rule 801. Hearsay is not admissible except as provided by the Hawai'i Rules of Evidence, or by other rules prescribed by the Hawai'i Supreme Court, or by statute. HRE Rule 802. An exception to the hearsay rule is an admission by a party-opponent, which is defined as "[a] statement that is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity[.]" HRE Rule 803(a)(1)(A).

The State offered testimony by Bautista and Montilliano that Villados stated a number of times that he wanted Bautista to

take the rap for him, and offered it as an admission on his part. Bautista testified that Villados called her multiple times and wanted her to "take the blame" and claim ownership over the fanny pack because she would only "have to do drug court since it is [her] first drug charge." The recording of Villados's call to Montilliano was identified as such by Montilliano. Pressuring Bautista to take the rap was an admission of guilt. Villados's statement that he would take it "if worse comes to worse," was also an admission of guilt. The Circuit Court did not err when it admitted Villados's post-arrest statements as an admission by a party-opponent.

(3) In determining the sufficiency of the evidence, the test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. State v. Gaston, 108 Hawai'i 308, 311, 119 P.3d 616, 619 (App. 2005). "Substantial evidence" as to every material element of the offense charged is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (citation omitted). When reviewing a jury trial, an appellate court will not pass upon the jury's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the jury as the trier of fact. State v. Jhun, 83 Hawai'i 472, 483, 927 P.2d 1355, 1366 (1996).

As we have already concluded that the Circuit Court did not err in admitting the prior bad acts testimony and his post-arrest statements, Villados's argument that without this evidence there is insufficient evidence to support his conviction is without merit.

Even without this evidence, contrary to Villados's assertion, while recognizing that mere proximity is not enough to establish dominion and control, viewed in the light most

favorable to the prosecution, there was sufficient evidence for the jury to infer that Villados had the power and intention to exercise dominion and control over the methamphetamine and drug paraphenalia even though he was not in actual possession of them at the time of his arrest. See State v. Moniz, 92 Hawai'i 472, 475-76, 992 P.2d 741, 744-45 (1999). In addition to the above, the State introduced into evidence: (1) Villados's ID card found in the fanny pack with the cash; (2) the scales found in Villados's bedroom; (3) the picture of Villados taken one week before the raid depicting him wearing the fanny pack around his neck; and (4) a rental agreement showing Villados had the right of possession over the residence that the drugs were found in. Bautista testified that Villados owned the fanny pack, he alone handled the fanny pack and used it to store his supply of methamphetamine, Villados bought the fanny pack, and that she never saw the third occupant of the residence with the fanny pack. Unlike in Moniz, here, there was evidence showing that the drugs were found among Villados's personal belongings and that he had ownership and control over it. This evidence was of sufficient quality and probative value to enable a reasonable juror to support a conclusion that Villados had constructive possession over the contents of the fanny pack.

(4) Villados argues that his due process and jury trial rights were violated by the Circuit Court's imposition of the consecutive sentences in this case. Citing State v. Mata, 71 Haw. 319, 789 P.2d 1122 (1990), Villados contends that "[g]iven the court's repeated warnings to Mr. Villados about the lengthy sentence he could receive if he elected to go to trial," there was "the distinct implication that [Mr. Villados] would be sentenced more severely because [he] had demanded jury trial." However, the Circuit Court made no threat, express or implied, that it would impose a more lenient sentence upon Villados if he pled guilty. Instead, through its discussions with Villados, the

8

court informed Villados of the seriousness of the charges and the risk of proceeding to trial. At the hearing, the court made it clear to Villados that because of his prior convictions, "you're facing a mandatory minimum of ten years if you're convicted," and that if he rejected the plea agreement offering to lower the mandatory minimum to five years,

> it's going to be ten years *if you're convicted. The judge won't have any choice is what that means.* So if you're convicted, it's up to 15 years on the charges, but a mandatory minimum of ten years. So you are guaranteed you will stay ten years in prison if you're convicted.

(Emphasis added.)

The judge told Villados that, with the sentencing for his prior drug-related cases, he could end up with a sentence far longer than what was offered in the plea agreement. These statements did not burden Villados's ability to exercise his right to a jury trial, but rather fully informed Villados of the potential ramifications if he chose to reject the plea agreements and proceed to trial. Compare Mata, 71 Haw. at 325-26, 789 P.2d at 1126 (trial judge informed defendants that in sentencing convicted DUI offenders, he would give consideration to whether they had demanded jury trials). There is nothing in the record to suggest that the Circuit Court expressly or impliedly threatened to impose a more severe sentence if a jury trial were demanded by Villados.

Villados does not dispute that the Circuit Court properly considered the sentencing factors set forth in HRS § 706-606 and stated its reasons for imposing consecutive sentences. See, e.g., State v. Tauiliili, 96 Hawai'i 195, 199, 29 P.3d 914, 918 (2001); State v. Cornelio, 84 Hawai'i 476, 494, 935 P.2d 1021, 1039 (1997). We cannot conclude that the Circuit Court abused its discretion in doing so.

For these reasons, the Circuit Court's April 15, 2010 Judgment Conviction and Sentence is affirmed.

DATED:  Honolulu, Hawai'i, November 28, 2011

On the briefs:

Joyce K. Matsumori-Hoshijo
for Defendant-Appellant on
the Opening Brief

Davelynn M. Tengan
for Defendant-Appellant on
the Reply Brief

Renee Ishikawa Delizo
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Apellee

Chief Judge

Associate Judge

Associate Judge